**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WISCONSIN**

MARY LOU STELTER
2328 James Avenue
Altoona, WI 54720,

         **Plaintiff,**

         **COMPLAINT**

v.

WISCONSIN PHYSICIANS SERVICE     Case No. 17-cv-463
INSURANCE CORPORATION
1717 W. Broadway, P.O. Box 8190
Madison, WI 53708,

         **Defendant.**

Plaintiff, Mary Lou Stelter, by and through her attorneys, Bakke Norman, S.C., by David C. Schoenberger, states and complains as follows:

**PARTIES**

1. Plaintiff, Mary Lou Stelter, is an adult resident of the State of Wisconsin and resides at 2328 James Avenue, Altoona, Wisconsin 54720.

2. Defendant, Wisconsin Physicians Service Insurance Corporation, is a domestic business corporation. Its principal place of business is located at 1717 W. Broadway, Madison, WI 53708. At all relevant times, Wisconsin Physicians Service Insurance Corporation also operated a business located at 2519 Hillcrest Parkway, Suite 200, Eau Claire, WI 54702.

**NATURE OF ACTION**

3. This is a civil action alleging discrimination in employment in violation of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.* Plaintiff, Mary Lou Stelter, alleges that she was discriminated against in the terms and conditions of employment based on her disability; that her employer failed to accommodate her disability; that her employer

retaliated against her for opposing discrimination in the workplace; and that she was ultimately discharged because of her disability.

4. Plaintiff filed a discrimination complaint with the Equal Rights Division on March 2, 2015, which was cross-filed with the EEOC, Case No. 26G201500544C.

5. Plaintiff received a Notice of Right to Sue with respect to the complaint identified in paragraph 4 on March 26, 2017.

## JURISDICTION AND VENUE

6. This case or controversy presents a federal question, and this Court has jurisdiction over the subject matter of this proceeding pursuant to 42 U.S.C. § 12101, *et. seq*. Moreover, Plaintiff was employed as a Sales Representative with Defendant, Wisconsin Physicians Service Insurance Corporation, a corporation doing business within the territorial jurisdiction of this Court. Therefore, venue in this Court is appropriate because the conduct giving rise to the complaint occurred in this District.

## FACTUAL BACKGROUND

7. On April 22, 2002, Plaintiff, Mary Lou Stelter (hereinafter "Stelter"), was hired by Wisconsin Physicians Service Insurance Corporation (hereinafter "WPS") as a Sales Support Assistant. Plaintiff continued to work in that capacity until her promotion to an Agency Sales Representative in October, 2007.

8. Stelter received very positive job reviews during her entire career at WPS, receiving ratings of either "Achieves" or "Exceeds" expectations on all reviews that pre-dated a back injury that occurred on February 19, 2014.

9. Wendy Harings (hereinafter "Harings") became Stelter's supervisor in approximately 2008.

10. Harings gave and signed Stelter's positive job reviews beginning with the review in the summer of 2009, and continuing to the review Harings gave and signed in August, 2013.

11. In some of the reviews Harings gave Stelter, she did comment about Stelter taking time off from work for medical appointments.

12. At all times material hereto, Stelter had a permanent physical impairment to her spine, including her lower back, that substantially limited the performance of various major life activities, such as sitting, standing, lifting, driving, and bending, as well as her musculoskeletal and neurologic bodily functions.

13. Stelter received periodic medical treatment for her spine condition by Dr. Skogstad of Eau Claire Chiropractic Clinic from February, 2001, until her back injury in February, 2014, which aggravated and exacerbated her pre-existing spine condition.

14. On February 19, 2014, Stelter injured her back at work. On that date, Stelter was required to hold up a large, heavy piece of equipment, which she believes was a server for the WPS computers. The equipment had been on a shelf that had pulled away from the wall. To prevent it from being damaged or broken, Stelter was instructed to hold the equipment up until something could be found to place it on.

15. Given the time and weight involved, Stelter sustained a significant injury to her lower back. Stelter subsequently experienced significant back pain as well as tingling and shooting pain sensations into her lower legs and hip.

16. Stelter sought medical care and treatment for the aggravation and exacerbation of her pre-existing spine condition.

17. Stelter was required by her medical providers to be off work from February 19, 2014, until March 20, 2014.

18. On March 20, 2014, Stelter was allowed to return to work for up to 4 hours per day with less than an hour of sitting, standing and walking and no allowance for driving, in addition to other restrictions.

19. After Stelter returned to work in March, 2014, she advised Harings that she was scheduled to see an Occupational Medicine doctor, followed by a physical therapy appointment in the afternoon. Stelter also presented Harings with the work restrictions she received the previous week. Harings told Stelter that the missed time would be considered her lunch hour, even though Stelter did not see the doctors during her normal lunch break.

20. On March 24, 2014, Stelter was evaluated by Dr. Jane Stark in the Occupational Medicine Department at Marshfield Clinic due to worsening symptoms. Dr. Stark found objective abnormalities to support Stelter's subjective complaints and diagnosed her with work-related low back pain. However, Stelter was allowed to return to work in a sedentary-light duty capacity with frequent alternation between sitting, standing and walking, with the ability to drive as needed, among other restrictions.

21. When Stelter returned to work from her afternoon therapy appointment, she received an email from Harings stating that Harings did not realize how much time the two appointments would take, so in the future, she needed to schedule her medical appointments over her lunch break, or use her paid time off (PTO) to cover the absences. Since the medical care and treatment, and the time off for that treatment, was being covered by Worker's Compensation, Stelter advised Harings that her PTO should not be used to cover that time off.

22. After Stelter returned to work, Harings would frequently make negative comments about Stelter's need for medical care and treatment, and she would tell her she needed to schedule her medical appointments during her lunch hour so as not to miss work. In addition,

4

Harings would tell Stelter to perform a job function one way, and then after Stelter complied, Harings would come back and tell her she did it wrong and to do the job duty differently.

23. In June, 2014, Stelter received her annual review from Harings. Harings rated Stelter as "Needs Improvement" in several of the rated categories, and she also commented on the "many appointments" Stelter had. Harings also told Stelter she needed to sign a form that stated that she had three (3) months to improve or WPS could terminate her employment.

24. In response, Stelter authored a written rebuttal to the first bad review she had gotten in 12 years, and stated that she believed she was being treated differently because she sustained a back injury at work.

25. Stelter also discussed her review with the Vice President in the Eau Claire, Wisconsin, office. The Vice President agreed with Stelter that it was not a fair review and advised Stelter to contact Human Resources.

26. Stelter also contacted Human Resources to talk about the sudden change in treatment by Harings. Stelter expressed her concern that the sudden change in her performance review was due to the back injury she sustained at work and that she was concerned Harings was trying to get her fired. Stelter was assured that her excellent past performance had been well documented and that Harings would not be able to terminate her.

27. After Stelter's report to Harings, the Vice President in Eau Claire, Wisconsin, and Human Resources about her belief that the change in treatment was due to her back injury, the treatment Stelter received from Harings became worse, as further set forth below.

28. In late June or early July of 2014, Stelter told Harings that her back pain intensified when driving or when riding in a car for a long period of time.

5

29. Shortly thereafter, Harings began requiring Stelter to drive to their Wausau office for work, resulting in an 11 hour work day.  Stelter had to stop, get out, and walk around every 30 minutes due to the pain caused by prolonged driving. Stelter was also required by Harings to visit agents throughout central, western and northern Wisconsin, causing her back pain to flare up significantly.  These were new job requirements for Stelter imposed by Harings after her back injury and after her complaints about the treatment she was receiving from Harings.

30. Following the comments made by Stelter during her performance review regarding the change in treatment by Harings since her back injury, and Stelter's similar comments to the Vice President in Eau Claire and to Human Resources, Harings no longer allowed Stelter to run quotes on new enrollments as she had done before.

31. On August 21, 2014, after 21 physical therapy sessions, Stelter was discharged from physical therapy having failed to meet the following rehabilitation goals:

  a. Ability to lift 20 pounds from floor to waist;
  b. Achieve full and free range of motion of the lumbar spine as necessary to complete daily activities such as dressing herself and tying her shoes; and
  c. Return to work with a pain level less than 2/10 as necessary to sit and stand at work.

32. In September, 2014, an MRI of Stelter's lumbar spine revealed she had severe spinal canal and recess stenosis at L4-5 with grade 1 anterolisthesis of L4-5 and severe degenerative facet changes; left paracentral disc protrusion at L5-S1 with mild displacement of the left S1 nerve root; and multilevel degenerative changes of the lumbar spine.

33. Because of Stelter's back condition, she was referred to Dr. Gary Gasser in the Neurological Department at Marshfield Clinic who diagnosed her with an exacerbation of pre-existing degenerative L4-5 spondylolisthesis secondary to her work injury of February 18, 2014,

among other things. He further indicated that if her symptoms were not alleviated by conservative care, surgery was a viable alternative.

34. In approximately September/October, 2014, Stelter sent Harings an email advising that her next medical option would be surgical intervention, and she indicated she would put surgery off until the beginning of 2015 to avoid being absent from work during WPS' busy time of the year (typically in November and December, 2014).

35. Upon providing that notice to Harings, Harings poor treatment of Stelter continued and in some instances, got worse. Specifically, Harings would yell, scream and swear at Stelter to the point others could hear; Harings would also openly question Stelter on what work she had done all week; and Harings would make derogatory comments about the work that Stelter was doing.

36. Before Stelter could get to the beginning of 2015, on December 10, 2014, Stelter was terminated from her employment with WPS by Harings who claimed that she "did not improve."

37. At all relevant times, Stelter's previous back condition, and the exacerbation thereof by the workplace injury she sustained on February 19, 2014, was a "disability" as that term is defined at 42 U.S.C. § 12102(1)(A).

38. At all relevant times, Plaintiff was a Qualified Individual with a Disability, as that term is defined by 42 U.S.C. § 12111 (8).

39. At all relevant times, WPS was an employer subject to the mandates of the ADA pursuant to 42 U.S.C. § 12111 (5)(a).

7

## FIRST CAUSE OF ACTION
## DISCRIMINATION IN THE TERMS AND CONDITIONS OF EMPLOYMENT
### (Violation of 42 U.S.C. § 12112(a) and § 12112(b))

40. Stelter realleges and incorporates herein all previous paragraphs as if set forth fully herein.

41. Stelter's treatment by Defendant following her back injury, including, but not limited to, receiving a poor performance review, being placed on a performance improvement plan, being frequently verbally harassed about her medical appointments, being yelled and swore at by her supervisor, having her work duties reduced, being required to schedule medical care and treatment during her lunch hour and being required to travel to Wausau and to travel to meet customers outside the Eau Claire, Wisconsin, area, were all acts and conduct undertaken in violation of the 42 U.S.C. § 12112(a) and/or § 12112(b).

42. Stelter's disability, or the perception of it, was a motivating factor in Defendant's employment decisions and actions and inactions described herein.

43. Stelter has suffered and continues to suffer pecuniary harm and emotional injury as a result of Defendant's discrimination.

44. Stelter also endured physical pain and suffering due to Defendant's conduct.

45. Defendant's conduct was also undertaken with malice and/or reckless indifference to Stelter's federally protected rights.

## SECOND CAUSE OF ACTION AGAINST WPS
## FAILURE TO PROVIDE REASONABLE ACCOMMODATION
### (Violation of 42 U.S.C. § 12112(b)(5))

46. Stelter realleges and incorporates herein all previous paragraphs as if fully set forth herein.

47. On numerous occasions, from after Stelter's back injury in February, 2014, to her termination in December, 2014, Stelter asked her supervisor, Harings, to be able to schedule

8

doctor appointments either early in the morning or late in the afternoon to get the medical care and treatment she needed for her back condition.

48. Harings, on some occasions, did not respond to these requests. On other occasions, Harings chastised Plaintiff for needing time off to treat her back condition. Ultimately, Harings told Stelter she needed to schedule medical appointments during her lunch breaks.

49. Stelter also told Harings, on numerous occasions, that driving, riding in a car, or sitting for long periods exacerbated her back condition and its associated symptoms. Because of that, Stelter asked that Harings limit the amount of time she would need to drive and sit.

50. In response, Harings still required Stelter to make appointments to visit agents which required her to travel for ½ hour to 2 hours each way. Harings also altered Stelter's job duties to require Stelter to drive to Wausau to work, which resulted in her working 11 hour days, 4 hours of which were spent sitting driving in a car, further aggravating and exacerbating her back condition. This also inhibited Stelter's ability to seek and obtain medical care and treatment for her lower back condition.

51. Stelter also alerted Harings in the late summer/early fall of 2014 that she may need surgery on her lower back, and then time off from work after that surgery to recuperate. Stelter also advised that she would wait until after the end of the year to do so, if it became necessary, so as to schedule it during the slower period of the year.

52. Plaintiff was terminated before she could have surgery or need time off to recuperate.

53. By its actions and conduct described herein, Defendant failed to accommodate Stelter's disability by, among other things, requiring her to drive long distances to work in

9

Wausau or meet customers outside the Eau Claire, Wisconsin, area; requesting and/or requiring that Stelter attend medical appointments in lieu of her lunch hour; and by pre-emptively terminating her employment before she may have needed time off from work to recuperate from surgery.

54. Defendant also did not engage in any interactive process to determine what, if any, accommodations it could or should make in order to allow Stelter to satisfactorily perform her job duties.

55. Defendant's failure to accommodate Stelter also aggravated her back condition and caused her physical pain and suffering.

56. Defendant's failure to make reasonable accommodations to Stelter constitutes a violation of 42 U.S.C. § 12112(b)(5)(A).

57. Stelter has suffered and continues to suffer pecuniary harm and emotional injury as a result of Defendant's conduct.

58. Defendant's conduct, as described herein, also caused Stelter to experience physical pain and suffering.

59. Defendant's conduct was undertaken with malice and/or reckless indifference to Stelter's federally protected rights

### THIRD CAUSE OF ACTION AGAINST WPS
### TERMINATION OF EMPLOYMENT DUE TO DISABILITY
### (Violation of 42 U.S.C. § 12112(a))

60. Stelter realleges and incorporates herein all previous paragraphs as if set forth fully herein.

61. Stelter engaged in protected activity when she opposed what she believed was discriminatory conduct undertaken by Harings to Harings directly, to the Vice President in Eau Claire, Wisconsin, and to Human Resources.

62. As set forth herein, Stelter was terminated from her employment position due to a real or perceived disability in violation of the 42 U.S.C. § 12112(a).

63. Stelter has suffered and continues to suffer pecuniary harm and emotional injury as a result of Defendant's conduct.

64. Defendant's conduct was undertaken will malice and/or reckless indifference to Stelter's federally protected rights.

**FOURTH CAUSE OF ACTION**
**RETALIATION FOR OPPOSING DISCRIMINATION IN THE WORKPLACE**
**(Violation of 42 U.S.C. § 12203 (a) – (b))**

65. Stelter realleges and incorporates herein all previous paragraphs as if set forth fully herein.

66. Defendant's conduct toward Stelter as described herein which includes, but is not limited to, being frequently verbally harassed about her medical appointments, being yelled and swore at by her supervisor within earshot of her coworkers, by the reduction in her work duties, by being required to travel to Wausau and to travel to meet customers outside the Eau Claire, Wisconsin, area, and ultimately, in terminating her, was done in retaliation for Stelter reporting her complaints and objections to the treatment she was receiving directly to Harings, as well as to the Vice President in Eau Claire, Wisconsin, and Human Resources, all in violation of 42 U.S.C. § 12203 (a) and/or (b).

67. Stelter's opposition to discrimination in the workplace was a motivating factor in Defendant's employment decisions and actions described herein.

68. Stelter has sustained pecuniary harm and emotional injury due to Defendant's conduct.

69. Defendant's conduct, as described herein, also caused Stelter to experience physical pain and suffering.

11

70. Defendant's conduct was undertaken with malice and/or reckless indifference to Stelter's federally protected rights.

**WHEREFORE,** Plaintiff, Mary Lou Stelter, asks for judgment against the Defendant for the following:

a. Back pay;

b. Reinstatement or front pay in lieu thereof;

c. An Injunction against further acts of discrimination and retaliation if reinstatement is ordered;

d. Prejudgment interest;

e. Compensatory Damages;

f. Punitive Damages;

g. Plaintiff's attorneys fees and costs incurred in this action;

h. Post judgment interest; and

i. Any and all other relief the Court deems just and appropriate.

**A JURY TRIAL IS DEMANDED**

Dated: June 15, 2017.

                                                 **BAKKE NORMAN, S.C.**

                                      By: */s/ David C. Schoenberger*
                                          David C. Schoenberger
                                          Attorney No. 1035131
                                          2919 Schneider Avenue SE, P.O. Box 280
                                          Menomonie, WI  54751-0280
                                          (715) 235-9016
                                          dschoenberger@bakkenorman.com
                                          Attorneys for Plaintiff